**WINTHROP–ATKINS CO., Inc. v. CROSS.**

Civ. A. No. 8486.

United States District Court
D. Massachusetts.

Feb. 17, 1950.

Robert, Cushman & Grover, Richard F. Walker, Boston, Mass., for plaintiff.

Walter F. Henneberry, Clifford H. Byrnes, Hale, Sanderson, Byrnes & Morton, Boston, Mass., Thomas J. Byrne, New York City, for defendant.

FORD, District Judge.

On July 7, 1949 the plaintiff, a Massachusetts corporation located in Middleboro, filed a suit against the defendant for infringement of U. S. Patent No. 2,454,521 granted to plaintiff November 23, 1948, on application filed March 9, 1946. The plaintiff is engaged in the manufacture and sale of leatherette specialties, principally desk calendars and mounts for photographs. The defendant is engaged in business at Taunton, Massachusetts, where he manufactures and sells cardboard desk calendars under the trade name "Kliklok". Claims 1 and 8 of the patent, hereinafter called the Nichols (assignor to plaintiff) patent, are in suit.

The patent in suit pertains to foldable easels such as are used as mounts for photographs, calendars, etc., and relates especially to an improved back for such an easel. As disclosed by the Nichols patent the structure includes a stiff panel or back such as cardboard, to whose forward face the frame elements or other parts designed to hold and protect the photo or calendar are secured. A leg is hinged to the back and the purpose of the leg is to hold the back in the desired upright position of use. A brace is formed in the panel and integrally hinged to it at a substantial distance from the hinge axis of the leg. The leg is apertured and has a tongue formed in its upper margin and the tongue provided with shoulders at its base is designed to fit into the upper portion of a longitudinal slot formed in the brace, interlocking the leg and brace and thereby holding the leg firmly when in use. The brace member is integral with the panel and as shown in the patent the line where the brace is united to the panel is slightly curved to increase the natural resilient tendency of the cardboard to resist force applied for swinging it out of the plane of the panel and causing it to return to its initial position when released. This resilient tendency of the frame also has the effect of holding the leg and brace in firm engagement. The leg is so apertured and the leg and brace are so shaped and relatively positioned that when the calendar is folded, the free end of the brace may readily be projected so as to extend through the aperture in the leg so as to overlie the upper portion of the leg.

The calendar is sold and shipped folded with the brace projecting through the leg aperture, the brace exerting pressure on the leg and tending to keep the leg close to the panel until the user pulls the leg rearwardly, overcoming the resistant tendency of the brace and putting the leg into operative supporting position.

In the plaintiff's structure (as indicated) the swing of the leg to the divergent position of use automatically sets the brace in operative position and when the leg is

674

moved to a position of use a distinctive snap is heard.

The accused "Kliklok" structure reverses the interlocking parts so that the tongue is upon the brace and the slot in the aperture of the leg and in order to provide bend-resistance to the brace for firm interlocking and normally keep the leg folded, an angular hinge line to the brace is provided. When folded the brace overlies the leg as in the Nichols structure. The leg in the accused device is cut from the backboard and separated from the backboard along its perimeter. A flexible binding material secures the leg to the backboard and constitutes the hinge about which the leg may be rotated into divergent mount-supporting position. The defendant, as stated, in his structure resorts to an angular hinge line in the brace to afford further bend-resistance to the brace. It is apparent the Nichols structure and that of the defendant are singularly similar. There appear to be no functional differences.

There is no question that in a highly competitive art the plaintiff's structure met with marked success commercially. The defendant is a competitor and, before the appearance of the Nichols calendar, his products were the almost exclusive source of supply.

The claims in suit read as follows:

1. A foldable easel back comprising a stiff panel having a leg and a brace connected thereto, the leg and brace having complemental interlocking parts operative when engaged to hold the leg in downwardly divergent position of use relatively to the panel, the lower end of the brace being so united to the panel that the brace tends to lie in the plane of the panel, the connection between the leg and panel comprising hinged means permitting the leg to swing outwardly from the panel, said leg having an aperture through which the brace projects, the tendency of the brace to lie in the plane of the panel being effective normally to keep the leg folded.

8. A foldable easel back comprising a stiff panel of sheet material and a leg and a brace each integral with the panel, the upper end of the leg being hinged to the panel so as to swing freely, and the forward end of the brace being hinged to the panel at a substantial distance from the hinge axis of the leg, the hinge connection of the brace to the panel being such that the brace resiliently resists force applied for swinging it out of the plane of the panel, the leg having an aperture through which the brace protrudes, the brace tending to lie in the plane of the panel and having portions engaging the leg in its folded position to hold it folded.

The defences are (1) invalidity and (2) noninfringement.

It is conceded by plaintiff that the Nichols patent is a combination of elements old in the art and it is conceded, as it must be, that unless the Nichols structure performs or produces a new or different function or operation than that theretofore performed or produced by them, it is not patentable invention. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Mabey v. Howard & Lewis Motor Sales, Inc., 1 Cir., 132 F.2d 40; Anderson Co. v. Lion Products Co., Inc., 1 Cir., 127 F.2d 454. However, the plaintiff in its brief and at the trial contended that although the use of a non-straight hinge line for the supporting prop is old,[1] "the prior art fails entirely to show its use in the claimed combination to supply operating pressure to the locking brace."

In the light of the prior art, it does not require extended discussion to demonstrate that, unless it can be said that the use of a curved hinge at the attached end of the brace in the Nichols structure so as to provide a more desirable bend-resistant type of hinge is a patentable improvement, the Nichols structure does not involve invention.

U. S. Patent No. 673,904, dated May 14, 1901, issued to one Hartmann (not cited in

1. U.S.Patent No.2,472,405, for an easel hinge, issued to the defendant Cross June 7, 1949 on application filed July

23, 1945, shows a curved and angular hinge to supply bend-resistance to the hinge line of the leg or prop.

the Patent Office) discloses a foldable easel back comprising a stiff panel of flexible material such as cardboard having a leg and a brace each integral with the panel with complemental locking parts operative when engaged to hold the leg in downwardly divergent position of use relative to the panel. The lower end of the brace is so united to the panel that the brace tends to lie in the plane of the panel. The connection between the leg and the panel comprises hinge means allowing the leg to swing outward from panel and the leg has an aperture through which the brace projects and the tendency of the brace to lie in the plane of the panel is effective normally to overlie the leg and keep it folded. Also the Hartmann patent discloses that the forward end of the brace is hinged to the panel at a substantial distance from the hinge axis of the leg and the hinge connection of the brace to the panel resiliently resists force applied for swinging it out of the plane of the panel.

It appears convincingly that the non-cited Hartmann patent discloses all the features of claims 1 and 8 of the Nichols patent. Also U. S. Patent No. 2,256,977, issued September 23, 1941, to Graebener, shows a box to the rear face of which is attached a supporting leg. Attached to the rear face of the panel is a brace. The leg has an aperture formed in it and when the leg is swung rearwardly about a score line or crease line it carries with it the brace which rotates angularly about the hinge line. Thus when the leg of the Graebener patent is taken between the fingers and swung rearwardly, the tongue or brace is automatically moved into the leg latching or display position. The Graebener patent also shows a tension member—a rubber band or spring—attached to the upper portion of the leg for the purpose of bringing the leg into supporting position automatically when released from the carton in which it is originally packed and shipped. It is an added feature of the Graebener patent.

The Nichols patent states that "The present invention has for one of its objects the provision of an improved easel back provided with a leg and brace, and so designed that the mere operation of swinging the leg to the divergent position of use automatically sets the brace in the operative position." As is seen in the prior art, this feature is not new. It is disclosed in the patents already mentioned, also in U. S. Patent No. 2,373,874, granted April 17, 1945 to defendant Cross and in Heithaus, U. S. Patent No. 1,303,306, issued May 13, 1919, and in Weber, U. S. Patent No. 819,680, issued May 1, 1906.

A further object of the Nichols patent is a leg and brace so devised that when moved into position a distinct snap is felt. This is not a new feature, even if it is of any consequence. It is present in the Graebener and Heithaus structures and to some extent in Hartmann.

At the close of this case, the court interrogated plaintiff's counsel to point out specifically what was the claimed invention of the Nichols patent. Counsel stressed the simplicity of the structure, the ease of automatic operation when the leg was swung rearwardly and co-function therein of an intentionally made bend-resistant hinge line of the brace. The court stated then that it was of the opinion that the Nichols patent read on all fours with the disclosures in the Hartmann patent. The only distinction counsel appeared to make between Hartmann and Nichols was that Hartmann did not disclose any added bend-resistancy to the hinge line of the brace. Nor did Graebener. (Heithaus shows a spring tongue or brace adapted to spring into locking engagement with the leg.) It is obvious, in reading the claims in suit, that there is not any specific claim to any intentional curved or non-straight hinge line to supply added bend-resistance to the brace. What is claimed as a feature is "the lower end of the brace being so united to the panel that the brace tends to lie in the plane of the panel, * * *." That feature is found in Hartmann. There is of course a natural tendency because of the normal resiliency of the cardboard used in all the structures mentioned in the prior art for the brace to lie in the plane of the panel and to be effective normally to keep the leg folded.

■ However, plaintiff argues the court should construe these claims narrowly and interpret them as containing this feature of a non-straight hinge line of the brace. Claims are to be interpreted in the light of the specification. National Development Co. v. Lawson-Porter Shoe Machinery Corp., 1 Cir., 129 F.2d 255, 258. It is true that Nichols in his specification in disclosing the feature with respect to the brace remaining in the plane of the panel does suggest this may be accentuated by the use of a curved hinge line, but he did not stress this as an essential element. The idea or feature of bend-resistency to cause calendar members to lie in the plane of the panel was not new. It was supplied by the natural bend-resistance of the cardboard and also added to by curved and angular hinge lines. Added bend-resistance by the use of a curved hinge line of the brace does not tend to add novelty to the patent in suit. This Nichols must have known and probably for this reason did not stress it or claim it. Bend-resistancy in cardboard material supplied by a non-straight line was old. Adding bend-resistancy by use of a curved line hinge was old and known to the art. Cross, the defendant, as stated above, had a patent for an easel hinge issued to him (U. S. Patent No. 2,472,405, issued June 7, 1949) disclosing the use of curved and angular lines in the calendar environment to supply bend-resistance. Application for this patent was made July 23, 1945. And one does not doubt such a principle was known to the art long before Cross made his application. In fact it seems apparent that a good mechanic would be entirely familiar with the principle.

The claims in suit show clearly what Nichols claimed as his invention. They are not susceptible of more than one construction. Cf. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800. The court does not believe the feature of a curved hinge line of the brace is included in or should be read into the claims in the light of the clarity of the claims and the language of the specification.

Further, even if the court did interpret the claims so as to include the feature of a curved hinge line in the brace, in the light of what has been said, it would not add up to anything more than an effective improvement of what was known to the art to cause legs and braces to lie in the plane of the panel to which they are attached. This added resistance feature was within the reach and competence of any skilled mechanic. No new function was produced nor performed by the accentuated bend-resistance hinge line of the brace. The mode of operation of the brace was identical with the cardboard braces in the art with straight hinge lines and possessing natural resistance. The structure would possess utility with a straight hinge line in the brace. In fact, the plaintiff, in the summer of 1949, because of a state court suit brought against it by the defendant for royalties, changed from the curved hinge line to a straight line which it now uses for bend-resistance and there was no evidence it had ceased to solicit orders for desk calendars with this feature.

There is no need to discuss any of the other features of the patent. These elements perform substantially the same function as disclosed in the prior desk calendar art, albeit certain of them may be structural improvements that by no means involve invention. Whatever improvements are shown, such as wider legs and the integrated nature of the structure, are mere mechanical improvements.

There need be no discussion concerning the fact that the Nichols calendar has met with success commercially. That fact cannot supply patentability where it is plainly lacking.

■ It is the conclusion of the court that claims 1 and 8 of the Nichols patent in suit disclose a combination of old elements that perform no new function not disclosed in the prior art; that they disclose a structure that lacks novelty and invention and, consequently, are invalid.

In this view there is no need to discuss the defence of non-infringement.

Plaintiff's complaint is dismissed and judgment is to be entered for the defendant with costs of suit. No attorney's fees.